IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **KYLE MCLENNAN**, | Case No. 2:14-cv-755-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **OREGON DEPARTMENT OF CORRECTIONS; DOROTHY D. WETTLAUFER; DOCTOR LELAND BEAMER; REGISTERED NURSE BLANCHETT; REGISTERED NURSE ASTORGA**, | |
| Defendants. | |

Kyle McLennan, Eastern Oregon Correctional Institution, 2500 Westgate, Pendleton, OR 97801-9699. Plaintiff *pro se*.

Ellen F. Rosenblum, Attorney General, Vanessa A. Nordyke, Assistant Attorney General, OREGON DEPARTMENT OF JUSTICE, 1162 Court Street N.E., Salem, OR 97301-4096. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiff, Kyle McLennan, proceeding *pro se*, brings this action against the Oregon Department of Corrections ("ODOC") and individual defendants Doctor Leland Beamer, Registered Nurse and Medical Supervisor Dorothy Wettlaufer, Registered Nurse Jimmi

PAGE 1 – OPINION AND ORDER

Blanchett, and Registered Nurse Ashley Astorga.[1] Plaintiff alleges violations of his rights under the Eighth Amendment. Before the Court is Defendants' Motion for Summary Judgment on all claims. For the reasons that follow, Defendants' motion is granted.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

Plaintiff did not file a response to Defendants' motion for summary judgment. A court may not, however, grant summary judgment by default. *See Heinemann v. Satterberg*, 731 F.3d

---

[1] Plaintiff's Complaint alleges that Grievance Coordinator Sobotta, who works at ODOC, harassed and retaliated against Plaintiff in order to prevent him from filling a grievance against ODOC. Plaintiff stated that he would add Ms. Sobotta as a defendant in an amended complaint. Plaintiff, however, did not (1) name Sobotta as a defendant in his complaint, (2) amend his complaint to add Sabotta as a Defendant, or (3) provide any evidence suggesting that Sobotta harassed or retaliated against him. Therefore, because Plaintiff did not file suit against Ms. Sobotta, the Court does not need to consider that aspect of Plaintiff's allegations.

PAGE 2 – OPINION AND ORDER

914, 916-17 (9th Cir. 2013). When a party fails to respond to a fact asserted by the movant, a court may:

> (1) give [the party] an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). This rule was amended in 2010 to incorporate the "deemed admitted" practice of many courts—where a party fails to respond to an asserted fact, that fact may be "deemed admitted" (considered as undisputed). *Heinemann*, 731 F.3d at 917. Here, the Court will consider as undisputed the facts asserted by Defendants in their unopposed motion.

Considering a fact as undisputed, however, does not mean that summary judgment automatically may be granted. A court must still determine, considering the facts the court has found undisputed for want of a response, the legal consequences and proper inferences to be drawn from those facts. *Id.* (quoting Fed. R. Civ. P. 56 Advisory Committee Notes (2010)). Accordingly, the Court considers Defendants' motion on the merits in light of the undisputed facts.

## BACKGROUND

Plaintiff is an inmate who was admitted to the custody of Oregon Department of Corrections ("ODOC") on May 15, 2013. Plaintiff has been housed at Eastern Oregon Correctional Institution since June 26, 2013. Plaintiff's earliest release date is October 7, 2015. Shelton Decl. Dkt. 27, ¶ 3.

Plaintiff filed a complaint in this matter on May 6, 2014, alleging that Defendants (1) acted with deliberate indifference to his medical needs throughout treatment of a corneal ulcer in his right eye, and (2) harassed and retaliated against him when he tried to file a grievance against ODOC. Dkt. 1.

PAGE 3 – OPINION AND ORDER

Corneal ulcers are most commonly caused by injury, abrasion, an infection with bacteria, or viruses. Shelton Decl. Dkt. 27, ¶ 6. Corneal ulcers may heal with a white or grey round spot on the cornea that represents a residual scar from the injury; the spots usually clear as time passes. *Id*. The symptoms for a corneal ulcer are a red eye, eye pain, a feeling that something is inside the eye, tearing, blurry vision, pain when looking at bright lights, and swelling of the eye lids. *Id*.

When the eye is examined and nothing is initially visible, the health practitioner stains the cornea with Fluorescein in order to make foreign objects, abrasions, or ulcers visible. *Id*. If upon an examination the cause of the corneal ulcer or abrasion is unknown, the patient may be given antibiotic drops that work against many kinds of bacteria. *Id*.

When Plaintiff woke up on the morning of November 24, 2013, his right eye was red, hurting, and he felt like something was in it. *Id*. at ¶ 7. Later that day, Plaintiff discussed his discomfort with Defendant Jimmi Blanchett, a Registered Nurse working at ODOC. *Id.* Blanchett used Flourescein to stain Plaintiff's eye, and noted that Plaintiff's right eye was red and had an abrasion, but found no foreign objects in it. *Id*. Blanchett followed ODOC nursing treatment protocol for eye infections or abrasions and (1) gave Plaintiff Tobramycin, antibiotic eye drops, (2) instructed him to use it "three times per day every day for five days," and (3) advised him not to use his contact lenses until his eye was better.[2] Blanchett noted that Plaintiff verbalized his understanding. *Id*.

On November 25, 2013, the next day, Plaintiff complained to Defendant Ashley Astorga, another Registered Nurse, that his eye pain had worsened. *Id*. at ¶ 8. Astorga "noted that [Plaintiff] had redness on the entire sclera, an obvious cornea abrasion, [that] his upper eyelid

---

[2] Contact lenses are the property and responsibility of inmates; ODOC recommends inmates use eyeglasses. Dkt. 27, Shelton Decl. ¶ 7.

PAGE 4 – OPINION AND ORDER

was swollen, and no foreign body [in the eye]." *Id*. Astorga also had Plaintiff stay in the infirmary until Doctor Leland Beamer could see him that morning. *Id*.

When Dr. Beamer saw Plaintiff that morning, he noted that Plaintiff's right eye was inflamed, but could not determine the cause except for Plaintiff's use of contact lenses. *Id*. He also noted that Plaintiff's right eye was inflamed and had a corneal ulcer. *Id*. Dr. Beamer prescribed an antibiotic, a pain killer, and eye drops, and instructed Plaintiff on how and when to use the medications. *Id*. Dr. Beamer also told Plaintiff not to use his contacts for three to four weeks. *Id*.

On December 13, 2013, Plaintiff complained that he had "hurt/scratched his eye," and Registered Nurse Johanna McGainey saw him. *Id*. at ¶ 9. McGainey noted a "grey/clear tiny circle on top of the pupil area," and scheduled Plaintiff to see the doctor as soon as possible. *Id*. Dr. Beamer saw Plaintiff again on that same day. *Id*. He noted that Plaintiff "was still having visual problems and had a central grey spot (leukemoid reaction/scar) where he had his eye ulcer." *Id*. Dr. Beamer also referred Plaintiff to an ophthalmologist, Doctor Bart A. Adams, to "ensure that the infection was gone and that the corneal ulcer was healing." *Id*. at ¶ 19.

On December 19, 2013, Plaintiff saw Doctor Adams. *Id*. at ¶ 10. Doctor Adams determined that Plaintiff's eye did not appear to be infected, and that Plaintiff "had a healing corneal ulcer that was most likely secondary to contact lens use." *Id*. Doctor Adams prescribed artificial tears to sooth the eye, and told Plaintiff "that hopefully the scar would fade over time and that his vision will improve." *Id*. Doctor Adams also advised Plaintiff "to wait on using contact lenses again for another three to four weeks to allow the epithelium to finish healing." *Id*.

Plaintiff was also scheduled to be seen by an Optometrist, Doctor Evers, on January 30, 2014, but because Plaintiff had a guest that day, he requested a change of appointment. *Id*. at

PAGE 5 – OPINION AND ORDER

¶ 13. Plaintiff's appointment was rescheduled for the next time Doctor Evers went to the facility, March 4, 2014. *Id*. When Doctor Evers saw Plaintiff to check on the corneal ulcer's healing progress, he determined that the ulcer had become a corneal scar, meaning that it had healed. *Id*. at ¶ 14.

On June 20, 2014, Doctor Evers saw Plaintiff again and noticed that Plaintiff's left eye "had a sub epithelial infiltrator and that he suspected that wearing a dirty contact lens was the cause." *Id*. at ¶ 15. He also noted that Plaintiff's contact lens was "very dirty." *Id*. Doctor Evers told Plaintiff to limit the use of his left contact lens for a time, and to "Get glasses!" *Id*.

Currently, Plaintiff's eye health is stable. *Id*. at ¶ 18.

## DISCUSSION

Defendants argue that they are entitled to summary judgment on all claims. The Court grants summary judgment in favor of ODOC because it is immune from suit. The individual defendants are also entitled to summary judgment in their favor because there is no evidence establishing a genuine issue for trial on whether they were deliberately indifferent to Plaintiff's medical needs.

### A. Claims Against ODOC

ODOC argues that it is (1) immune from suit under the Eleventh Amendment, and (2) not a proper defendant for Plaintiff's 42 U.S.C. § 1983 claims.

#### 1. Eleventh Amendment

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Under the Eleventh Amendment, federal courts may not entertain a lawsuit brought by a citizen against a state, its agencies, or departments without the state's consent. *Seminole Tribe of Florida v.*

PAGE 6 – OPINION AND ORDER

*Florida*, 517 U.S. 44, 54 (1996); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). When a Defendant raises an immunity defense promptly and the targeted claims are of the type barred by the Eleventh Amendment, it is an error to fail to dismiss the claims. *See*, *e.g.*, *City of S. Pasadena v. Mineta*, 284 F.3d 1154, 1158 (9th Cir. 2002).

State prisons are considered state agencies for purposes of the Eleventh Amendment. *Allison v. California Youth Authority*, 419 F.2d 822, 823 (9th Cir. 1969). ODOC is considered a state prison; therefore, Plaintiff's claims against it are barred. *See Thunderbird v. Or. State Dep't of Corr.*, 2011 WL 2971798, at *8 (D. Or. June 28, 2011) (holding that claim against ODOC is barred by Eleventh Amendment).

### 2. 42 U.S.C. § 1983

Parties deprived of constitutional rights, privileges, or immunities by state actors can obtain a legal remedy under 42 U.S.C. § 1983. Section 1983, however, does not abrogate a state's Eleventh Amendment immunity from damage suit. *Blaylock v. Schwinden*, 862 F.2d 1352, 1353 (9th Cir. 1988) (citing *Duckworth v. Franzen*, 780 F.2d 645, 651 (7th Cir. 1985). Hence, 42 U.S.C. § 1983 does not include state governments and agencies as persons that can be sued without their consent. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Because ODOC is a state agency, it is immune from suit brought under 42 U.S.C. § 1983 in federal court. Accordingly, ODOC is entitled to summary judgment on all claims.

### B. Deliberate Indifference Claims

Plaintiff brings claims of deliberate indifference against individual defendants Beamer, Wettlaufer, Astorga, and Blanchett. In his Complaint, Plaintiff claims that the individual defendants were deliberately indifferent to his "serious medical condition" and as a result he suffered from "(1) severe pain; (2) loss of sight; and (3) psychological trauma." Dkt.1, ¶ 32.

The Court finds no genuine issue for trial that Defendants were deliberately indifferent to Plaintiff's serious illness or injury.

### 1. Standard

"Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle v. Gamble*, 429 U.S. 104, 104-05 (1976). Deliberate indifference to serious medical needs of prisoners can constitute "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. *Id.* at 103 (citing *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Deliberate indifference can be manifested by medical staff in responding to a prisoner's needs, or even by prison guards if they intentionally deny or delay the prisoner's access to medical care or interfere with the treatment once prescribed. *See Estelle*, 429 U.S. at 104.

To succeed on an Eighth Amendment claim for inadequate medical treatment, Plaintiff must show that the Individual Defendants acted with "deliberate indifference to [his] serious medical needs." *Id*. Deliberate Indifference is a "high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004) (finding that a showing of medical malpractice or negligence is not enough to meet the deliberate indifference standard).

"There is both an objective and a subjective component to an actionable Eighth Amendment violation." *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002). Plaintiff must show that (1) he was confined "under conditions posing a risk of objectively, sufficiently serious harm" and (2) "the officials had a sufficiently culpable state of mind in denying the proper medical care." *Id*, *Farmer v. Brennan*, 511 U.S. 825, 825-26 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

Regarding the objective component, Plaintiff must demonstrate the alleged deprivation was "sufficiently serious" from an objective viewpoint. *Farmer*, 511 U.S. at 834 (citing *Wilson,*

PAGE 8 – OPINION AND ORDER

501 U.S. at 298). "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are serious." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quotation marks omitted).

"[A] serious medical need is present whenever the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Clement*, 298 F.3d at 904 (determining objective component was met because leaving prisoners unattended after contact with pepper spray could have caused them significant health issues). *See Lolli v. Cnty. of Orange*, 351 F.3d 410, 419 (9th Cir. 2003) (finding that prisoner faced a sufficient risk of harm when official left prisoner, a Type I diabetic, without food or insulin throughout the night).

Regarding the subjective component, Plaintiff must show that the official acted with a "sufficiently culpable state of mind." *Wilson*, 501 U.S. at 297. Negligence in diagnosing or treating a medical condition is not enough to show a culpable state of mind. *Clement*, 298 F.3d at 904. This requirement instead follows the principle that "only unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Wilson*, 501 U.S. at 298.

An official's deliberate state of mind is satisfied by showing that the official (1) purposefully acted or failed to respond to a prisoner's pain or possible medical need; and (2) the harm the prisoner suffered was caused by the indifference. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Penner*, 439 F.3d at 1096 (determining that if doctor was

aware of prisoner's need to see an orthopedist, the doctor was deliberately indifferent by failing to ensure prisoner's fracture was set and cast).

### 2. Dr. Beamer

Plaintiff contends that Dr. Beamer was deliberately indifferent because he did not send him to an eye specialist, and then failed to provide him with the treatment the specialist prescribed. Dkt.1, ¶ 42. Defendant responds that Plaintiff cannot establish either the objective or subjective prong of the deliberate indifference claim.

Dr. Beamer saw Plaintiff on November 15, 2013, the same day Plaintiff complained about eye pain to Registered Nurse Astorga. When Dr. Beamer saw Plaintiff he had already been given eye drops. Dr. Beamer inspected Plaintiff's eye, saw the ulcer, found no foreign body, warned Plaintiff to stop using his contact lenses for some time, and prescribed him with more medications, including an oral systematic antibiotic and a new antibiotic eye drop to fight a potential eye infection.

Furthermore, Dr. Beamer saw Plaintiff again on December 13, 2012, the same day Plaintiff complained to nursing staff that he hurt or scratched his eye. At this point Dr. Beamer examined Plaintiff's right eye, and noted that he was still having problems with his vision and that he had a central grey spot where the eye ulcer had been. Dr. Beamer also referred Plaintiff to an ophthalmologist "to ensure that the infection was gone and that the corneal ulcer was healing." Shelton Decl. Dkt. 27, ¶ 19. Plaintiff was also seen by an optometrist. *Id*. at ¶ 13. Plaintiff, however, chose not to go to his original optometrist's appointment; instead he went in March on the next available appointment. When the optometrist saw Plaintiff, his corneal ulcer was already healing, and like Dr. Beamer, the optometrist told Plaintiff to stop his continuous use of contact lenses *Id*. at ¶ 17. Currently, Plaintiff's eye health is stable. *Id*.

Defendant submitted a report from Steven Shelton, M.D., the Medical Director of ODOC Health Services. Dr. Shelton analyzed Plaintiff's medical record and stated: "In my professional medical opinion, the care of Inmate McLennan's right eye was consistent with community medical standards." *Id*. at ¶ 19.

Based on the facts deemed undisputed, Plaintiff fails to raise a genuine dispute regarding the quality of care he received for his eye problem. The Court finds that Dr. Beamer's actions did not put Plaintiff at risk of suffering a "significant injury or unnecessary wanton of pain," thus Plaintiff cannot establish the objective component of his deliberate indifference claim. The Court also finds that nothing in the record reflects that Dr. Beamer acted with a subjectively culpable state of mind to cause Plaintiff harm; to the contrary, Dr. Beamer saw Plaintiff promptly, prescribed medications, and referred him to a specialist. Therefore, the Court grants summary judgment in favor of Dr. Beamer.

### 3. Registered Nurses

Plaintiff claims that Defendants Wettlaufer, Astorga, and Blanchett were deliberately indifferent to Plaintiff's medical needs because they practiced medicine in the capacity of a doctor. Dkt. 1 at ¶ 41. Plaintiff does not state that the treatment the nurses gave him was inappropriate, but merely alleges that because each nurse "performed duties of a doctor" Plaintiff faced "further irreparable injury." *See id*.

The deliberate indifference standard does not require the Court to determine if the nurses practiced medicine in the capacity of a doctor; instead, the Court must analyze whether the treatment the nurses provided showed indifference to Plaintiff's serious medical needs. Analyzing the undisputed facts surrounding each nurse's treatment of Plaintiff's eye, the Court finds that none was deliberately indifferent to Plaintiff's medical needs.

PAGE 11 – OPINION AND ORDER

### a. Nurse Wettlaufer

Plaintiff claims that "Defendant Wettlaufer performed duties of a doctor when reviewing [Plaintiff's] medical records and assessing whether [he] was receiving the standard of medical care, and then decided the course of his treatment." Dkt. 1, ¶ 28. Defendant argues that "[i]nstead of 'practicing medicine,' Wettlaufer's involvement was limited to reviewing records and responding to two inmate communication forms." Dkt. 25, pg. 8.

To support his claim, Plaintiff alleges that on two occasions he wrote an inmate communication form about the adequacy of his treatment, and Nurse Wettlauffer wrote back to Plaintiff a few days after receiving the forms. Nurse Wettlaufer replied to Plaintiff explaining that she reviewed his health care record and found that his medical needs were being met, informed him about his course of treatment, and expressed that if there were changes to his medical condition that he should "sign up for a sick call."

After analyzing the undisputed facts surrounding Plaintiff's and Nurse Wettlaufer's exchange of information, the Court agrees with the Defendant that the record does not contain evidence showing that Nurse Wettlaufer was deliberately indifferent to Plaintiff's medical needs.

### b. Nurse Astorga

When Nurse Astorga saw Plaintiff on November 25, 2013, she examined his eye and correctly noted that his eye was red, swollen, and that there was no foreign body in it. Moreover, she kept Plaintiff in the infirmary until Dr. Beamer saw him that morning. Nurse Astorga's examination and the fact that Plaintiff was kept in the infirmary until Doctor Bearmer saw him show that Nurse Astorga was not deliberately indifferent to Plaintiff's medical needs.

### c. Nurse Blanchett

When Nurse Blanchett saw Plaintiff on November 24, 2013, she examined his eye and noted her observations. She also performed an examination of Plaintiff's eye during which she

PAGE 12 – OPINION AND ORDER

temporarily stained his eye in order to enhance detention of foreign bodies or damage to the cornea. Nurse Blanchett advised Plaintiff not to use contacts and gave him Tobramycin, antibiotic eye drops.

Defendant argues that Nurse Blanchett's consultation "was consistent with nursing treatment protocol for patients with plaintiff's condition." Dkt. 25, pg. 10. In his Declaration, Dr. Shelton states: "Part of the examination when nothing is visible [in the eye] is to Fluorescein stain the cornea in order to make any foreign objects, abrasions, or ulcers visible. If the exact cause of a corneal ulcer or abrasion is not known to be from trauma, patients may be given antibiotic drops that work against many kinds of bacteria." Dkt. 27, ¶ 6. Thus, Nurse Blanchett's treatment and examination of Plaintiff's eye was consistent with common practice.

Although Plaintiff alleges that Nurse Blanchett's treatment caused him further significant injury, this contention is not sufficient to establish the objective component of a deliberate indifference claim. Plaintiff offers no evidence in the record supporting these allegations. Although on November 25, 2013, the day after Nurse Blanchett saw Plaintiff, Dr. Beamer prescribed Plaintiff other antibiotic eye drops instead of Tobramycin, this fact does not indicate that Nurse Blanchett did not give Plaintiff proper treatment or that Nurse Blanchett made an error. Doctor Shelton states that Tobramycin is given to inmates for eye infection and abrasion pursuant to ODOC Nursing treatment protocol. Dkt. 27, at ¶ 7. Even if Nurse Blanchett would have been negligent by giving Tobramycin to Plaintiff for his eye injury, negligence is not enough to establish a deliberate indifference claim. *Clement*, 298 F.3d at 904.

Plaintiff also cannot show that Nurse Blanchett had the culpable state of mind to cause him any pain. The only reasonable inference from the evidence is that Nurse Blanchett's

PAGE 13 – OPINION AND ORDER

examination and treatment of Plaintiff's eye was intended to help Plaintiff with his condition. Therefore, Nurse Blanchett was not deliberately indifferent to Plaintiff's medical needs.

## CONCLUSION

Defendants' Motion for Summary Judgment (Dkt. 25) is GRANTED. This case is dismissed.

**IT IS SO ORDERED**.

DATED this 22nd day of July, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge